The last case on the calendar today is Poku v. Garland. Mr. Formica, you have three minutes for rebuttal. You can begin whenever you're ready. Good morning, Your Honor. My name is Glenn Formica. I represent Petitioner Nona Poku in this immigration appeal. Your Honor, what I'd like to focus on are four errors. The first is that the immigration judge imported facts from outside the removal proceedings. He went to the bond record. And this is problematic for several reasons. One is it's just unfair to go to a bond record when the respondent at the time was not offered the opportunity to expect it or review it. And it was not really brought up until the judge writes his decision where he impeaches him with this bond record. So I never really gave him an opportunity to properly rebut. That necessarily implicates a question of law, and that would be under G. Lynn Liu. Why is there prejudice on that? I think your client admitted that it wasn't true, that it was false. The information from the bond hearing gave knowledge that he didn't whip together with his wife, right? So how is there any prejudice from using something that he admits was accurate? Your Honor, I would disagree with the court's characterization of how he admitted it. He was unclear as to what's specific. I think it's clear in the transcript that he was unclear about what the judge was referring to. And the judge kept saying, you're lying because you have it here in the bond record. And there's a reason that the board has said in matter of ANGI 22INN decision 1102BIA99, which is it's improper to go to the bond record, that it's an incomplete proceeding, and that it's inherently prejudicial if you're going to import that into the removal proceedings. I would say it can't go to the court. I'm sorry. But the BIA decision doesn't refer to that bond hearing proceeding, does it? Your Honor, that's my next point, is that we need a full decision. The BIA decision doesn't refer to really much of anything except to just say, well, we agree on discretion with the immigration judge. So we really don't know what was going on behind the curtain of the BIA decision. There's a pretty long paragraph in the BIA decision about the factors, right? Didn't they go through the positive and negative factors very similar to what the immigration judge did? Except that the immigration judge's decision never really analyzed it. And the second issue, to the extent that the BIA does go through that, those factors, it's clearly summary, extremely summary in nature. And when they're- Right. But doesn't that suggest, though, I mean, to the extent that, I mean, putting aside the summary quality, but the fact that they are referencing these various factors about background and what have you, albeit briefly, but they're not mentioning at all the bond proceeding, doesn't that suggest that that wasn't part of what the BIA was relying on? So, Your Honor, that moves to the fourth point that I have this morning, is that they don't really distinguish. Are we talking about discretion under 245, or are we talking about discretion under I-212? I mean, that's where this whole decision really starts to turn into a messy pancake, because there's two issues of discretion. One is discretion to grant the waiver for the admitted frauds. And to Your Honor's earlier point, he admitted, you know, I did these things. I admit these frauds. But that's the whole point that the Title VIII gives us the opportunity to apply for a discretionary waiver of those frauds. And so when you look to the BIA decision, particularly when you look to the immigration judge's decision, where are we talking about discretion? Are we talking about it on the I-212, or are we talking about it with just the general adjustment? I would submit that my interpretation of their decision is they're sort of just saying, well, we're just going to deny it as an act of discretion under 245. And if that's the case, what about the I-212? That was his application before the court. He knew he had these issues going into the courtroom. And he was asking why does that matter, though? They ultimately decided after balancing the positive and negative factors, it's a matter of discretion to deny the adjustment. Why does it matter? They're not required to go through a step that ultimately is not going to matter, right? Well, Your Honor, part of a, as this Court has said, I believe in paradoso, and this is in my brief. We lack a clear legal standard as to how the BIA was deciding it and really how the immigration judge was deciding it. Because there's no preamble, I mean, as this Court is familiar, in most Article III decisions, first section is legal standard, right? I mean, and then there's a little bit of analysis of that legal standard, and then we get into the bottom. The BIA cites its prior precedent, Silva-Trovino, and says discussing the framework for evaluating discretionary determinations, which are these positive and negative factors, and then they do that. So what about what the immigration judge did? Why can't we say that they understood the standard when they cite their own precedent for the framework and then applied it? I'm a little confused by that. Well, respectfully, Your Honor, they make a passing reference to that legal standard, and if a passing reference is sufficient, it still doesn't tell me or tell the litigants which they're applying it to, 245 or I-212. And it really doesn't get into any of the factors that we lay out in our brief about the legal standard. The one thing that they do say is they say, well, we acknowledge that there's a hardship here, clearly. But then they move to discretion, and it's just all summary and just sort of, yeah, we're not going to offer you indiscretion. Your Honor, the one point that I would make in this case, and honestly maybe more broadly in all discretionary cases, is that the Immigration Act and the case law really doesn't break down what goes into discretion. And that vagueness leaves a lot of room for improper facts and improper things coming into the immigration court's decision. Article II allows them this discretion, but there has to be some reasonable bounds in it. And whereas here you don't have a clear decision, you have a judge that reaches well outside of the record, references a bond record, even impeaches, I would mention, as we discuss in Section 4 of our brief, the very approval of the I-130, which had USCIS said that this was a fraudulent marriage to his prior wife Vivian Patterson, there would have been a 204C bond. So it's implicit that they didn't find prior marriage fraud. And yet you have an immigration judge going to the CIS and saying, well, actually, I see your I-130, but on a discretionary review, I'm going to say that that was marriage fraud. And, you know, this is where his case breaks down and dissolves into the situation that it's here before you on. We don't have a clear decision. The judge went outside the records, went outside the administrative record and doesn't really articulate clearly this is how I'm denying your case under this standard. All right. You reserve your three minutes.  I do, Your Honor. Thank you. And we have Ms. Chang for the government. Good morning, Your Honor. May it please the Court. My name is Linda Chang, and I am appearing on behalf of the Attorney General. I'd like to address some of these concerns that were just previously raised. First, Your Honor, it is correct that the Board properly conducted de novo review of the immigration judge's discretionary determination here, affirmed that result, and identified six reasons for agreeing with the immigration judge's decision. And notably, the Board did not rely on any reference to bond hearing statements. The Board could have summarily affirmed and not written a decision, but here it explicitly explained which reasons it was relying upon, and therefore there is no error with the Board decision. Additionally, with regard to what discretion was being used, it is clear from the agency decisions that we are deciding the adjustment of status application, and the agency presumed that Petitioner was admissible and proceeded to discuss the discretionary weight of the positive and negative factors, which ultimately resulted in the denial of his application. Therefore, even while receiving the benefit of the doubt with respect to admissibility, the agency concluded that he did not merit a favorable exercise of discretion. If Your Honors have any further questions, I'd be happy to answer some. I have one question. If, in fact, the BIA had relied on the bond proceeding, in your view, would that be sufficient to create either a constitutional issue or a question of law for us? Would that be problematic? That is an excellent question, Your Honor, but it is not before the Court today because that was not what the agency did. Furthermore, this Court has not- Wait, just stop for a second. Part of the reason I'm asking that is the BIA does not specifically reference the bond proceeding, but, I mean, obviously it's seeing everything that is in front of the IJ, and so if there were a basis to infer that they considered that, I'm just getting- I'd like your view just on whether or not you think that might be problematic. It's not clear based on the circuit's case law. Your Court has not decided this issue in the context of relief. However, there was the Ninth Circuit case, Joseph v. Holder, which was looking at the use of bond-hearing materials in the context of removability and deciding that issue, which then tags along to the Board's discussion of using bond-hearing statements with regards to removability again because that is a burden that the government bears. Now, in the context of relief, which is where we are, it is unclear whether such material could be used by the agency when deciding discretionary determination. What about the fact- did he not admit that he had had lied in connection with living with- That's correct, Your Honor. So that would also be a separate issue, right, whether or not there's any prejudice by the use of that information, right? That's correct, Your Honor. All right. Are there any other questions? Thank you. Mr. Vermike, you have three minutes in rebuttal. Your Honor, in regards to the issue of prejudice, and we addressed this in our brief, in the immigration judge's decision, he writes, and this is on page 26 of our brief, there also appear to be instances, and the court has concerns whether he was being truthful to the immigration court, both in terms of his testimony, the bond hearing, as well as documents that were filed with the court. So, Your Honor, the immigration judge in his decision was setting out that that was very impactful. He even suggests that he's not completely certain about it, but that it's weighing on- it's included in his decision, that this is an important factor in his decision. So, Your Honor, I think the prejudice is there. I think the question the court really needs to set with is what is the minimal standard for the immigration judge to make- Did he admit that he committed fraud? I don't understand. Isn't that- don't you concede that he admitted that he had committed immigration fraud? He did, Your Honor, and that's the 212 aspect of it, yes. But doesn't that include this? Or am I missing something? Doesn't that include suggesting that he was living together with a wife when he wasn't? Wasn't that- Well, Your Honor, that goes to the credibility, and we addressed that in our brief. The immigration judge was starting to review his credibility, saying, I'm not buying any of this. I mean, I'm paraphrasing, obviously. Everything you're telling me now, I'm not buying. We have no credibility here. And presumably, that was part of his discretionary fact, his discretionary decision. At least that's what he suggests when he writes the- when he dictates his oral decision. And the BIA doesn't really pick this up or discuss it on appeal. So it's- the question, I think, is how little or how low is the standard by which someone can be removed and how low is the standard by which someone is to go before the administrative law judge and say, I'm looking for a waiver. Congress says I'm allowed this waiver. And the immigration judge is kind of all over the place in terms of grabbing a little bit from here, a little bit from there, which would be fine if a little bit from here and a little bit from there was all before the court, if it was all part of the administrative record. And it wasn't in this case. And it would also be more understandable, easy for me to argue, if the immigration judge had articulated the legal standard as carefully as he should have, if he was going to be grabbing a little bit from here and a little bit from there to say, well, actually, this isn't a major consideration in my decision on discretion. You know, the fact that you said one thing in the bond record. One final point, Your Honor, on the bond record with the way the immigration judge handled this. In effect, the immigration judge made himself a witness in the own case, his own decision, right? Because he's saying, I remember from my notes. Now, Mr. Poku doesn't have access to the immigration judge's notes. So the immigration judge is basically testifying, I'm going to put this into the record based on my recollection and based on my notes from many years before. This wasn't a bond hearing from a week before. It was a bond hearing from years before. And basing a discretionary decision on the credibility of Mr. Poku because of that. The court doesn't have any questions. Thank you. Thank you very much. Thank you both. We'll reserve decision. Have a good day.